UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VICTOR MONDELLI,**<br><br>Appellant,<br><br>v.<br><br>**BERKLEY REALTY PARTNERS # 244, LLC, JACK SILVERMAN REALTY & MORTGAGE CO., LLC.,**<br><br>Appellees. | MASTER FILE: 08-CV-1582 (WJM)<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

Kenneth J. Rosellini
Hallock & Cammarota, LLP
600 Valley Road
Suite 101
Wayne, NJ 07470

(*Counsel for Appellant*)

Julian Wilsey
Franzblau Dratch, PC
Plaza One
354 Eisenhower Parkway
PO Box 472
Livingston, NJ 07039-0472

(*Counsel for Appellees*)

**WILLIAM J. MARTINI, U.S.D.J.:**

  Debtor appeals from an order of the bankruptcy court enforcing a mortgage and lease to which Debtor was a party and from an order of the bankruptcy court denying Debtor's motion for reconsideration of the former order. Debtor, however, failed to

timely file a designation of record and statement of issues on appeal.  The Court finds after careful consideration that this failure warrants dismissal of Debtor's appeal.

I.      FACTS AND PROCEEDINGS

Although the Court ultimately dismisses the appeal on a procedural ground, a brief description of the facts of the case is necessary since dismissal on the procedural ground is only appropriate if the appeal lacks substantive merit, as the opinion will later explain.

This bankruptcy appeal concerns the bankruptcy court's disposition of real property owned by the estate.  Debtor generally used this real property as commercial rental space.  To satisfy Debtor's debts, the bankruptcy court, via two orders, allowed Debtor to obtain a loan by mortgaging the property.

The mortgage was a somewhat unorthodox financial instrument, as it was accompanied by an inseparable lease.  Like any typical mortgage, Debtor received a loan from the mortgagee, Jack Silverman Realty & Mortgage Co. ("JSRM"), that was secured by the real property.  Debtor used the loaned funds to pay his creditors in full.  Atypically, however, the Debtor at the same time entered into a lease agreement, the lessee of which was a company called Berkeley Realty Partners ("BRP").  Under the lease, lessee BRP paid lessor Debtor a monthly rental amount.  The lease expressly stated that its existence was a condition precedent to JSRM's grant of a mortgage, and the parties obviously contemplated that the mortgage and lease were part of an overall bargain.

The lease also contained three provisions of particular relevance to this appeal.

First, the lease gave BRP a right of first refusal, should Debtor sell the property.  Second, the lease contained a "subordination" provision, which required Debtor to subordinate his interest in the property to any mortgage that BRP entered for the purpose of obtaining money "for the construction and permanent financing" of the lease.  Third, the lease required BRP to pay property taxes and purchase insurance for the property.

The dispute arose when BRP attempted to mortgage the property pursuant to the subordination provision in the lease.  BRP sought the mortgage to obtain financing to redevelop the property.  As discussed above, the subordination provision required Debtor to subordinate its interest in the property to any mortgage that BRP entered to obtain financing for redevelopment of the property.  Subordination in this case required Debtor to complete a separate subordination agreement of some kind, which he refused to do.

In response, BRP and JSRM filed a motion to enforce the bankruptcy court's prior orders allowing Debtor to enter into the mortgage and lease.  Debtor opposed this motion with a two-page letter.  Debtor's only coherent argument against enforcement of the lease in this opposition was to claim that BRP had breached the lease by failing to pay property taxes, as required by the lease.

The bankruptcy court, Judge Donald Steckroth, granted BRP and JSRM's motion to enforce the mortgage and lease.  The court ordered Debtor to comply with all of the terms of the mortgage and lease.

Debtor then filed a motion for reconsideration of that order enforcing the mortgage

and lease. In this motion for reconsideration, Debtor raised new arguments that he had not previously raised, four of which are relevant to this appeal. First, Debtor argued that the lease was void because its provision granting BRP a right of first refusal constituted a clog on Debtor's equitable right of redemption with respect to either JSRM's mortgage or an equitable mortgage created in favor of BRP by the lease itself.[1] Second, Debtor appeared to argue that the lease imposed no obligation to subordinate his interest in the property to a mortgage for BRP—as BRP had requested—absent proof from BRP that it intended to use the proceeds from the mortgage to develop the property. Third, Debtor argued that BRP had breached the lease by subleasing a parcel of the property that the parties refer to as the "middle store." Fourth, Debtor argued that Judge Steckroth should recuse himself for bias. Debtor's reasoning for this argument was largely that Judge Steckroth's legal decisions against Debtor were consistently erroneous, evidencing bias against Debtor. Debtor also renewed his argument against enforcement of the lease on the grounds that BRP had breached it by failing to pay for property taxes and insurance.

The bankruptcy court denied Debtor's motion for reconsideration. With respect to Debtor's argument regarding BRP's right of first refusal, the court did not address whether this impermissibly clogged Debtor's right of redemption with respect to JSRM's

---

[1] Debtor's motion for reconsideration is muddled, rambling, and imprecise—like all of his filings—and it is not clear whether Debtor was arguing that BRP's right of first refusal clogged Debtor's right of redemption with respect to JSRM's mortgage or an equitable mortgage in favor of BRP. The motion could reasonably support either argument, as the Opinion will later explain.

mortgage. Rather, the court held only that the lease did not create an equitable mortgage in favor of BRP and dismissed Debtor's argument on that ground. With respect to Debtor's argument that the lease did not obligate him to subordinate his interest to a mortgage in favor of BRP absent evidence that BRP intended to use the proceeds for development of the property, the court appears to have not addressed that issue.[2] With respect to Debtor's argument that BRP breached the lease by subleasing the "middle store," the court found that the lease did not prohibit such use and thus that any sublease was not a breach. With respect to Debtor's argument that Judge Steckroth was biased, Judge Steckroth found no such evidence of bias and noted that even erroneous legal decisions are not grounds for recusal. Finally, the bankruptcy court held that any breach by BRP of the lease in failing to pay for property taxes or insurance was de minimis, that BRP quickly cured any such breach, and that such breach was not grounds to terminate the lease.

Debtor now appeals. Debtor essentially raises the same five arguments raised in its motion for reconsideration.

BRP and JSRM oppose the appeal. They argue, inter alia, that this Court should dismiss Debtor's appeal because Debtor failed to timely file a designation of the record and notice of issues on appeal.

---

[2] Again, Debtor's filings are quite muddled and imprecise, so this Court does not fault the bankruptcy court for construing Debtor's arguments differently than this Court does.

## II. DISCUSSION

The Court dismisses Debtor's appeal for failure to file a timely designation of the record and notice of issues on appeal. Such a dismissal on a procedural failure is appropriate only upon serious reflection, as the Opinion will now perform.

It is undisputed that Debtor has failed to timely file a designation of the record and statement of issues on appeal. Federal Rule of Bankruptcy Procedure 8006 states that "[w]ithin 10 days after filing the notice of appeal as provided by Rule 8001(a), . . . the appellant shall file with the clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Here, Debtor filed a notice of appeal to this Court on February 4, 2008. However, Debtor did not file a designation of record or statement of issues until April 2, 2008—well more than ten days after Debtor filed his initial notice of appeal, on February 4. Accordingly, Debtor failed to timely file a designation of the record and statement of issues, in violation of Rule 8006.

Such a failure to comply with Rule 8006 may constitute a basis for a district court to dismiss a bankruptcy appeal outright. In re Richardson Indus. Contractors, Inc., 189 F. App'x 93, 96 (3d Cir. 2006) (holding that a district court may dismiss a bankruptcy appeal if the appellant fails to follow the Federal Rules of Bankruptcy Procedure). Dismissal, however, is not automatic. Rather, it is appropriate only in consideration of six factors: (1) the ultimate merit of the appeal, (2) the extent of the violating party's

personal responsibility, (3) whether the violation caused prejudice to the violating party's adversary, (4) whether the violating party has a history of dilatoriness, (5) whether the conduct of the party was wilful or in bad faith, and (6) whether alternative sanctions would be as effective as dismissal. Id.; see Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

Here, consideration of these factors as a whole suggests that dismissal is an appropriate sanction for Debtor's failure to comply with Rule 8006. The opinion will address each factor in turn.

### A.     The Ultimate Merit of Debtor's Arguments on Appeal

All five of Debtor's arguments on appeal appear without merit. As an initial matter, with the exception of Debtor's argument that BRP materially breached the lease by failing to pay for property taxes and insurance, Debtor has improperly raised his arguments only in his motion for reconsideration. This alone warrants finding that these arguments lack merit, as motions for reconsideration are generally inappropriate vehicles to raise new issues that could have been raised in the initial motion. See In re Christie, 222 B.R. 64, 67 (Bankr. D.N.J. 1998) (holding that a motion for reconsideration should not provide the parties with an opportunity for a "second bite at the apple"); see also In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 182 (Bankr. D.N.J. 2002) (holding that a court should only grant a motion for reconsideration if (1) there is newly available evidence, (2) there is a need to correct a clear error of law or prevent manifest justice, or

(3) there is an intervening change in controlling law).  Nevertheless, the Court will consider these claims on their merits just to ensure the propriety of dismissal under Rule 8006.

### 1. Whether BRP's Right of First Refusal Voids the Lease as a Clog on Debtor's Equitable Right of Redemption

Debtor argues that BRP's right of first refusal voids the lease as a clog on Debtor's equitable right of redemption.  The Court disagrees.

Debtor is correct that the law generally prohibits what are referred to as "clogs" on a debtor's equitable right of redemption.  The equitable right of redemption is a common law right of a mortgagor to satisfying the outstanding mortgage after a default but before foreclosure.  55 Am. Jur. 2d *Mortgages* § 447 (2008).  Generally, a mortgagor entering a mortgage agreement cannot at the same time enter into an agreement that unduly restrains, or "clogs," his equitable right of redemption.  Humble Oil & Refining Co. v. Doer, 303 A.2d 898, 905 (N.J. Sup. Ct. Ch. Div. 1973) ("[I]t has been the rule that a mortgagor's equity of redemption cannot be clogged and that he cannot, as a part of the original mortgage transaction, cut off or surrender his right to redeem.").

Although such restraints, or "clogs," on the right of redemption may come in any form, one particular form is relevant here.  Specifically, courts have found an impermissible clog on the mortgagor's equitable right of redemption where contemporaneously with the creation of the mortgage, the mortgagee receives (either in the mortgage or a related agreement) an unconditional right to purchase the mortgaged

8

property.  Humble Oil, 303 A.2d at 906 ("As a part of the doctrine it is well settled that an option to buy the property for a fixed sum cannot be taken contemporaneously by the mortgagee.").  Obviously, such an unconditional purchase option could prevent the mortgagor from redeeming his property, and thus the option can be said to "clog" his right of redemption.

This is the type of clog to which Debtor here objects.  As explained above, Debtor claims that BRP's right of first refusal clogs Debtor's equitable right to redeem the property.  Debtor thus claims that the lease granting BRP's right of first refusal is void.[3]

---

[3] Debtor, relying on Humble Oil, fails to specify the mortgage giving rise to his equitable right to redeem the property.  Obviously Debtor may be referring to JSRM's mortgage, perhaps claiming that BRP's right of first refusal somehow restrains Debtor's ability to satisfy JSRM's mortgage and redeem his property.  But because Debtor relies on Humble Oil, Debtor may be, as Judge Steckroth assumed, asserting the existence of an implied or "equitable" mortgage in favor of BRP.

A description of Humble Oil illuminates where this confusion may have arisen.  In Humble Oil, a property owner contemporaneously entered two agreements: (1) a mortgage with a bank and (2) a lease of the property to an oil company and leaseback of the property to the property owner.  Id. at 900–01.  The transaction was somewhat complicated, but the net arrangement was that the property owner possessed the property, the oil company paid the mortgage to the bank as rent for its lease of the property, and the property owner paid the oil company an equivalent amount as rent for its leaseback of the property.  Id.  The court in that case found that the lease-leaseback arrangement between the owner and the oil company was essentially a separate mortgage, with the oil company as the mortgagee: the oil company received something akin to mortgage payments from the property owner, and the oil company's remedy for default, provided in the agreement, was to take possession of the property.  Id. at 909.  Accordingly, the court found that the lease-leaseback constituted an implied, or "equitable," mortgage.  Id.  Here, Debtor focuses on what are actually only superficial similarities between this case and Humble Oil—a mortgage entered contemporaneously with a lease—and thus may be asserting, as Judge Steckroth assumed Debtor was, that the lease to BRP constitutes an equitable mortgage.

But this argument suffers from a fatal flaw. While provisions that act as clogs on the equitable right of redemption may be invalid, they do not invalidate the entire associated mortgage. Rather, courts may simply remove the infringing clog and enforce the remaining mortgage. See id. at 916 (holding, after finding that an option constituted an illegal clog on the right of redemption, that "[t]he option is unenforcible"); see also id. at 908 ("[I]t is my conclusion on the facts of this case that the anti-clogging rule applies fully to Humble and that the option is absolutely void in its hand . . . ."). Here, even assuming that BRP's right of first refusal constitutes a clog on Debtor's right to redeem his property,[4] the proper remedy would be for a court to refuse to enforce the right of first refusal—not the entire lease. Accordingly, Debtor cannot avoid enforcement of the lease by pointing to BRP's right of first refusal.

### 2. Whether the Lease Obligates Debtor to Subordinate the Property to a Mortgage for BRP

Debtor argues that the lease obligates him to subordinate the property to a

---

Although this distinction is irrelevant here since, as explained above, a clog on Debtor's right to redemption would not void the entire lease, it is worth noting that the lease does not appear to constitute an equitable mortgage. It does not create a situation like in Humble Oil, where the property owner possesses the property and pays some pseudo-lessor a debt secured by the property. Rather, the lease here appears to be a normal lease, under which BRP, as lessee, possesses the property and pays Debtor, the property owner and lessor, rent.

[4]This is a tenuous proposition. Unlike a mortgagee's unconditional right to purchase the mortgaged property, which may prevent a mortgagor from being able to redeem it after a default, BRP here possesses only a right of first refusal. BRP can exercise this right only if Debtor chooses to sell the property, so BRP cannot prevent Debtor from simply redeeming his property from JSRM.

mortgage for BRP only upon an evidentiary showing from BRP that it intends to use the proceeds to develop the property. The Court disagrees. The relevant provision of the lease states that "[t]he Lessor shall subordinate the property on behalf of the Lessee to any institutional mortgage as required to procure financing for the construction and permanent financing of this lease." While this clearly requires Debtor to subordinate his interest to a mortgage for BRP for developments, it does not require BRP to present Debtor with evidence of such intent before subordination. Furthermore, as the bankruptcy court found, BRP has taken steps to begin improvements to the property, so there appears to be no basis for Debtor to refuse to subordinate his property to a mortgage for BRP.

### 3. Whether BRP Breached the Lease by Subleasing the "Middle Store"

Debtor argues that BRP breached the lease by subleasing the "middle store." The Court disagrees. The relevant provision of the lease provides that "the [middle] store whose address is 262 Springfield Avenue, Berkeley Heights, NJ which is presently vacant and shall be occupied by the Lessors, Berkley Realty Partners 244, LLC." Nothing about this provision suggests, as Debtor argues, that BRP may not sublease the "middle store."

### 4. Whether Judge Steckroth Should Have Recused Himself for Bias

Debtor argues that Judge Steckroth should have recused himself because he is biased against Debtor. The Court disagrees. Debtor's reasoning is essentially that Judge Steckroth has consistently ruled erroneously against Debtor. Notwithstanding that Judge Steckroth's rulings appear generally correct to this Court and indeed have been affirmed

by this Court on previous occasions, such an argument is not grounds for Judge Steckroth to recuse himself.[5] See Liteky v. United States, 510 U.S. 540, 548 (1994) (holding that judicial rulings, even erroneous ones, do not provide a basis for recusal, but are rather more appropriately grounds for appeal).

### 5. Whether BRP Breached the Lease by Failing to Pay for Property Taxes and Insurance

Debtor argues that BRP breached the lease by failing to pay for property taxes and insurance and that the bankruptcy court should accordingly refuse to enforce the lease. But this Court finds, as Judge Steckroth found, that while BRP did admittedly fail to pay for property taxes and insurance, this failure was de minimis and BRP promptly corrected the deficiency upon realizing it. It is not grounds to terminate the entire lease.

### 6. Summary of Debtor's Arguments

In summary, Debtor's arguments appear largely without merit. This factor clearly favors dismissal as an appropriate sanction for Debtor's failure to follow Rule 8006. The Court will proceed to evaluate the other five Poulis factors to determine if dismissal is appropriate.

### B. The Extent of Debtor's Personal Responsibility for the Rule 8006

---

[5] Debtor highlights a comment in which Judge Steckroth noted that "he had had it 'up to here' (motioning over his head) with this case." (App.'s Br. 20.) The Court finds that this is not an indication of bias but rather a harmless indication of frustration with the difficulty presented by this case. Given Debtor's chronic disobedience of the bankruptcy court's orders, incessant appeals, failure to follow rules, and poorly drafted filings, this Court too has had it "up to here" with this case.

**Violation**

There is no evidence or suggestion before the Court that Debtor is personally responsible for the Rule 8006 violation. The Court remains aware that Debtor personally appears very difficult to deal with in this bankruptcy proceeding. Nevertheless, there is no evidence that he is responsible for this particular infraction. Accordingly, the Court finds that this factor disfavors dismissal.

    C.    **Whether the Rule 8006 Violation Prejudiced BRP or JSRM**

The Court finds that Debtor's failure to timely file a designation of the record and statement of issues on appeal prejudiced BRP and JSRM at least somewhat. Rule 8006 is not merely a technical or aesthetic provision. It has a clear substantive function: to facilitate the parties' timely preparation of the appeal. See In re Trans World Airlines, Inc., 145 F.3d 124, 132 (3d Cir. 1998) (holding that Federal Rule of Bankruptcy Procedure 8010, which requires that appellate bankruptcy briefs contain a statement of issues presented, "is not only a technical or aesthetic provision, but also has a substantive function—that of providing the other parties and the court with some indication of which flaws in the appealed order or decision motivate the appeal" (quoting In re Gulph Woods Corp., 189 B.R. 320, 323 (E.D. Pa. 1995))). Parties should and do have expectations about when different filings in litigation will occur. Debtor's whimsical approach to Rule 8006's requirements puts his adversaries in limbo, unsure about what issues and record they must prepare to litigate. Such untimeliness is particularly concerning in the

bankruptcy setting, where parties such as BRP and JSRM have ongoing legal relationships with the debtor that may be put in jeopardy by legal challenges such as Debtor's. The Court finds that Debtor's delay likely prejudiced BRP and JSRM and thus that this factor favors dismissal.

> **D. Whether the Debtor Has a History of Dilatoriness and Whether the Debtor's Rule 8006 Violation Was Wilful or in Bad Faith**

Because these factors are related, the Court discusses them together. The Court finds that Debtor both has a history of dilatoriness and that Debtor's Rule 8006 violation was wilful. This is not the first time Debtor has violated Rule 8006. Indeed, it appears that Debtor violates Rule 8006 every time he files an appeal from his bankruptcy case. More generally, Debtor appears fairly unconcerned with many procedural rules; for example, Debtor in his motion for reconsideration completely ignored rules regarding the appropriate substantive scope of such motions. Furthermore, it is clear that Debtor's violations are wilful. This Court, the bankruptcy court, and his adversaries have made Debtor's Rule 8006 violations clear to him on numerous occasions, and Debtor has even responded to those objections. In summary, Debtor has an extensive history of wilful violations of Rule 8006 and other rules, so these factors strongly favor dismissal.

> **E. Whether Alternative Sanctions Would Be as Effective as Dismissal**

The Court finds that dismissal is the most effective sanction in this situation. While it is not clear whether monetary sanctions or dismissal would more effectively deter Debtor from violating bankruptcy rules, the Court notes that Debtor's rule violations

are more likely to result in intangible harm, which is not easily translated into monetary sanctions, rather than pecuniary harm, which translates more readily.  Also, the Court is reluctant to further burden Debtor with monetary sanctions as such sanctions have the potential to further harm the impecunious Debtor, his estate, and indirectly the other parties involved in his bankruptcy.  Accordingly, the Court finds that dismissal is the most effective sanction in this situation.

    **F.**    **Summary**

In summary, the Poulis factors as a whole strongly favor dismissal as the appropriate sanction for Debtor's violation of Rule 8006.  The Court accordingly dismisses Debtor's appeal.

**III.**    **CONCLUSION**

For the reasons above, the Court dismisses Debtor's appeal without full consideration on the merits.  An Order accompanies this Opinion.


    s/ William J. Martini  
    William J. Martini, U.S.D.J.